# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**SCOTT PATRICK DEVLIN,**

        **Plaintiff,**

        **v.**                               **Case No. 18-CV-1511**

**COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,**

        **Defendant.**

## DECISION AND ORDER

### PROCEDURAL HISTORY

Plaintiff Scott Devlin alleges he has been disabled since July 10, 2014, due to headaches, anxiety, depression, hypertensive cardiovascular disease/hypertension, multiple joint arthritis, myofascial pain syndrome, a right arm impairment, hand pain, neck pain, and acid reflux. (Tr. 181-93.) In August 2014 he applied for disability insurance benefits. (Tr. 158-59.) After his application was denied initially (Tr. 64-77) and upon reconsideration (Tr. 78-95), a hearing was held before an administrative law judge (ALJ) on May 17, 2017 (Tr. 35-63). On August 9, 2017, the ALJ issued a written decision, concluding that Devlin was not disabled. (Tr. 16-34.) The Appeals Council denied

Devlin's request for review on May 21, 2018. (Tr. 10-14.) This action followed. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 27, 28), and the matter is now ready for resolution.

## ALJ'S DECISION

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1571-1576. The ALJ found that Devlin "has not engaged in substantial gainful activity since July 10, 2014, the alleged onset date." (Tr. 21.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(c). "In order for an impairment to be considered severe at this step of the process, the impairment must significantly limit an individual's ability to perform basic work activities." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). The ALJ concluded that Devlin "has the following severe impairments: chronic right shoulder and neck pain, myofascial pain syndrome, carpal tunnel syndrome, and headaches." (Tr. 21.)

At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d),

2

404.1525, 404.1526) (called "The Listings"). If the impairment or impairments meets or medically equals the criteria of a listing, and meets the twelve-month duration requirement, 20 C.F.R. § 404.1509, the claimant is disabled. If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Devlin "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 23.)

Between steps three and four, the ALJ must determine the claimant's residual functional capacity (RFC), "which is [the claimant's] 'ability to do physical and mental work activities on a regular basis despite limitations from [his] impairments.'" *Ghiselli v. Colvin*, 837 F.3d 771, 774 (7th Cir. 2016) (quoting *Moore*, 743 F.3d at 1121). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1529; SSR 96-8p. In other words, the RFC determination is a function-by-function assessment of the claimant's "maximum work capability." *Elder v. Asture*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Devlin has the RFC

> to perform light work . . . except he must lift, carry, push, and pull primarily with the left, nondominant upper extremity, using the right only to assist; can never climb ladders, ropes, or scaffolds; can occasionally kneel; can never crawl; can never reach overhead with the right upper extremity; can occasionally reach laterally and to the front with the right upper extremity; can frequently handle and finger with the right upper extremity; must avoid concentrated exposure to vibration; and can perform occasional side-to-side rotation, flexion, and extension of the neck.

3

(Tr. 24.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. § 404.1565. The ALJ concluded that Devlin was "unable to perform any past relevant work." (Tr. 28.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant can do any other work, considering his age, education, work experience, and RFC. At this step, the ALJ concluded that, "[c]onsidering [Devlin's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Devlin] can perform." (Tr. 29.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE) who testified that a hypothetical individual of Devlin's age, education, work experience, and RFC could perform the requirements of a machine tender, a counter clerk, and a host. (Tr. 29-30.)

After finding that Devlin could perform work in the national economy, the ALJ concluded that Devlin "has not been under a disability . . . from July 10, 2014, through the date of this decision." (Tr. 30.)

## STANDARD OF REVIEW

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial

evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *L.D.R.*, 920 F.3d at 1151-52 (quoting *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R.*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## ANALYSIS

Devlin is proceeding without the assistance of counsel but with help from his brother, Mark Devlin. He contends that the ALJ erred in (1) determining that he did not suffer significant mental limitations; (2) weighing the medical opinion evidence; and (3) evaluating the intensity, persistence, and limiting effects of his symptoms. Devlin further contends that his conditions have worsened since the ALJ's decision.

### I. Mental impairments

At step two, the ALJ determined that Devlin's depression and anxiety did not cause more than minimal effects on his ability to perform basic work activities. (Tr. 21-

5

22.) In making this finding, the ALJ assigned great weight to the opinion of Robert Schedgick, PhD, who conducted a consultative psychological examination of Devlin on December 4, 2014. (Tr. 21.) Dr. Schedgick noted that Devlin "present[ed] himself in an emotionally stable manner" and "[did] not appear to be in any distress." (Tr. 309.) Although Devlin claimed to be depressed, Dr. Schedgick noted that he had a bright affect and laughed and smiled easily throughout the examination. (Tr. 314-15.) Dr. Schedgick diagnosed "[a]djustment reaction with depressed mood." (Tr. 321.) He opined that Devlin could follow a schedule; understand, remember, and carry out complex instructions; and exercise adequate focus, concentration, judgment, insight, decision making, and memory. (Tr. 320-23.) Overall, Dr. Schedgick did not believe that depression was impacting Devlin at that time. (Tr. 323.)

The ALJ determined that Dr. Schedgick's opinion was consistent with the record as a whole, including Schedgick's own observations of Devlin's "bright affect, good focus and memory, and good grooming." (Tr. 22.) According to the ALJ, Dr. Schedgick's opinion also was consistent with the observations of Devlin's primary physicians. His primary doctor, Robert B. Devermann, MD, first observed symptoms of mild anxiety and depression in October 2014. (Tr. 22 (citing Exhibit 8F, p. 16, 18 (Tr. 360, 362)).) Dr. Devermann prescribed psychiatric medication and continued to observe depressed and anxious moods during follow-up visits. (Tr. 22 (citing Exhibit 8F, p. 43, 46, 55, 104 (Tr. 387, 390, 399, 448)).) The ALJ noted that Devlin started seeing Eric Smiltneek, MD, in June

6

2015 and, since that time, Devlin denied any feelings of depression or anxiety. (Tr. 22 (citing Exhibit 10F, p. 6, 11, 15 (Tr. 478, 483, 487)).) Based on the consistent denial of symptoms, the ALJ concluded that Devlin's "depression and anxiety . . . now appear to be well-controlled with medication, or to have resolved within 12 months of their first manifestation." (Tr. 22.)

Devlin argues that the ALJ erred in evaluating his mental impairments. He claims that Dr. Schedgick mistook his expressions during the consultative examination as smiling and laughing when really he was clenching his jaw in pain and grunting. (ECF No. 15 at 2-3; ECF No. 26 at 4-6.) He further claims that he failed most of the memory tests; thus, Dr. Schedgick erroneously concluded that he had a good memory. (ECF No. 26 at 6.) Moreover, according to Devlin, his depression and anxiety were never under control. (ECF No. 15 at 3; ECF No. 26 at 3-5.) Rather, the alleged denial of mental-health symptoms after June 2015 is attributable to Dr. Smiltneek's poor record-keeping habits. Devlin also faults his former lawyers for not providing the Appeals Council with evidence purportedly showing that Dr. Smiltneek's records are incomplete, false, and inconsistent. (ECF No. 15 at 3; ECF No. 26 at 5-6.)

The ALJ did not commit reversible error in evaluating the severity of Devlin's mental-health impairments. Dr. Schedgick's opinion constitutes substantial evidence supporting the ALJ's finding, *see Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008), and the ALJ provided "good reasons"—namely, consistency with the record—for giving that

7

opinion great weight, *see* 20 C.F.R. § 404.1527. Devlin has not provided any evidence to prove that he was not actually smiling and laughing during the examination, and the court has not located any treatment records describing his alleged pain expressed in that manner. Likewise, the record does not support Devlin's claim that he failed the memory tests administered by Dr. Schedgick. Devlin was able to recall all three objects immediately but only one of three objects after a five-minute delay. (Tr. 312.) Based on that performance, Dr. Schedgick reasonably concluded that Devlin's memory was "at least adequate." (Tr. 322.)

Devlin also has failed to demonstrate that the ALJ erred in relying on the lack of documented mental-health symptoms after Devlin began seeing Dr. Smiltneek in June 2015. To support his claim that Dr. Smiltneek kept bad records, Devlin has submitted records from visits with Dr. Smiltneek in September 2016, September 2017, and October 2017. (*See* ECF No. 26-1.) However, these records were not presented at the administrative level, and Devlin has failed to show that they are worthy of consideration now. *See Schmidt v. Barnhart*, 395 F.3d 737, 741-42 (7th Cir. 2005) (quoting 42 U.S.C. § 405(g)) ("A reviewing court may order additional evidence to be taken before the Commissioner upon a showing that there exists 'new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'")

The records do not appear to be "new": one visit occurred well before the administrative hearing, and the others happened during the Appeals Council's review

8

period. Nor are they "material": the records show only that Devlin had a history of depression and anxiety, he denied such symptoms in September 2016 but mentioned them over a year later in October 2017, and he asked Dr. Smiltneek to change certain medical notes. (*See* ECF No. 26-1 at 3, 10, 14, 17, 20.) It is not reasonably probable that the ALJ would have found a severe mental impairment had she considered these additional records from Dr. Smiltneek. *See Schmidt*, 395 F.3d at 742. And, given that Devlin's former lawyers did submit a brief to the Appeals Council arguing for remand (*see* Tr. 258-60), it can be inferred that they concluded these records would not assist Devlin's claim. Devlin, therefore, also has not shown "good cause."

## II. Opinion evidence

Devlin also argues that the ALJ erred in crediting the opinions of the state agency medical consultants over the opinions of his treating physicians. (ECF No. 15 at 1; ECF No. 26 at 3-6.)

### A. Treating physicians

Devlin maintains that he should have been found disabled based on the medical source statements of his treating physicians, Dr. Devermann and Dr. Smiltneek. (ECF No. 26 at 3-6.) Both doctors opined that Devlin could not perform the sitting or standing requirements of sedentary work; could never use his right arm for reaching, handling, and fingering; could only occasionally use his left arm for reaching, handling, and fingering; and would need frequent unscheduled breaks. (Tr. 326-29, 468-72, 494-98.) Dr.

9

Smiltneek further opined that Devlin would be absent from work more than three times per month as a result of his impairments or treatment. (Tr. 472, 498.) If accepted, these opinions likely would result in a finding of disability.

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" to determine how much weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)(2)). "An ALJ must offer good reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations and citation omitted).

The ALJ did not commit reversible error in weighing the opinions of Devlin's treating physicians. The ALJ determined that Dr. Devermann's and Dr. Smiltneek's opinions were entitled to little weight because their extreme limitations were "inconsistent with the record as a whole." (Tr. 28.) Substantial evidence supports that determination. First, the record did not support significant sitting limitations. Dr.

10

Schedgick noted that Devlin sat comfortably during his consultative psychological examination (Tr. 28, 309, 311, 317), and Devlin did not appear to be in any acute distress at most of his other doctor visits (*See* Tr. 25-26, 28, 281, 297-98, 475, 478-79, 483, 488). Second, while Devlin had some limited range of motion of his right knee, the record did not support significant standing limitations. Treatment notes frequently reflect that Devlin walked with a normal gait or, at worse, a "slight" limp (*see* Tr. 26–28, 390, 475, 479, 483, 488), no doctor ever advised that Devlin needed to elevate his knee or avoid prolonged sitting or standing (Tr. 28), and Dr. Smiltneek did not explain why he issued Devlin a handicap parking sticker in December 2015 (Tr. 26, 477-79). Third, while Devlin had limited use of his right upper extremity, the record did not support any limitation of the left upper extremity. Devlin reported some pain in his left shoulder in December 2014 (Tr. 400), but at no point did any provider note any weakness or difficulty using the left arm (*see* Tr. 26-27, 387, 390, 399-401, 448). Fourth, the ALJ reasonably concluded that Dr. Smiltneek appeared to be unfamiliar with Devlin's current functional ability when he completed the March 2017 medical source statement, as the record did not include any medical notes from Dr. Smiltneek after May 2016. (Tr. 26, 28.)[1]

Because Dr. Devermann's and Dr. Smiltneek's opinions were not consistent with substantial evidence in the record, the ALJ reasonably did not afford them controlling

---

[1] The records Devlin submitted with his reply brief did include visits with Dr. Smiltneek during this interim period. (*See* ECF No. 26-1.) However, those records show only limitations with the right shoulder and neck; they are not consistent with Dr. Smiltneek's extreme limitations.

11

weight. Likewise, the ALJ provided "good reasons" for assigning little weight to those opinions.

**B.     State agency medical consultants**

Devlin maintains that the ALJ erred in relying on the opinions of state agency medical consultants Mina Khorshidi, MD, and Alka Bishnoi, MD. (ECF No. 26 at 3-4.) He points out that neither doctor examined him, and he accuses the doctors of improperly basing their opinions on "Dr. Smiltneek's incorrect and lack of records" and ignoring Dr. Devermann and Dr. Smiltneek's limitations. (*Id.* at 3.)

The ALJ did not commit reversible error in evaluating the opinions of the state agency medical consultants. Dr. Khorshidi and Dr. Bishnoi were "highly qualified and experts in Social Security disability evaluation," 20 C.F.R. § 404.1513a(b)(1), and their opinions can constitute substantial evidence supporting the ALJ's RFC assessment, even though they had never met or examined Devlin, *see Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). Both doctors opined that Devlin could perform the requirements of light work with only occasional assistive use of the right upper extremity, occasional reaching overhead with the right upper extremity, frequent reaching in other directions with the right upper extremity, and limited handling with the right hand. (Tr. 71-72, 90-92.) The ALJ gave considerable weight to these opinions, finding them "largely consistent with the record as a whole." (Tr. 27.) Substantial evidence supports that determination. Devlin consistently exhibited tenderness and reduced range of motion in his right arm, but the

record did not support any limitations with his left arm. (*See* Tr. 27, 281, 297-98, 362, 387, 390, 399-401, 448, 475, 478-79, 483, 488.)

Nevertheless, the ALJ included additional limitations in her RFC finding that went beyond the state doctors' assessments. For example, while Dr. Khorshidi and Dr. Bishnoi indicated that Devlin could frequently reach forward and side-to-side and occasionally reach overhead with his right upper extremity, (Tr. 71-72, 91), the ALJ restricted Devlin to occasional reaching forward and laterally and precluded him from any overhead reaching with the right (Tr. 24, 27). The ALJ also included restrictions in areas where Drs. Khorshidi and Bishnoi indicated no limitation, including climbing ladders, ropes, or scaffolds; kneeling; crawling; handling; fingering; exposure to vibration; and neck movements. (*Compare* Tr. 71-72, 90-91 *with* Tr. 24.) And the ALJ explained how the evidence supported these additional limitations. (*See* Tr. 27-28.)

Overall, the ALJ did not err in evaluating the medical opinion evidence, as substantial evidence supports her decision to give greater weight to the state agency medical consultants' opinions than to that of Devlin's treating physicians.

### III. Symptom evaluation

An ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p; *see also* 20 C.F.R. § 404.1529. "Second,

13

once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

After describing the subjective allegations (Tr. 24-25), the ALJ concluded that Devlin's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms; however, [Devlin's] statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record" (Tr. 25). The ALJ then summarized the objective evidence (Tr. 25-26) and explained why she found Devlin's allegations inconsistent with the record (Tr. 27). For example, the ALJ indicated that, while Devlin claimed he could lift no more than a half-gallon of milk with his left hand (Tr. 47-48), no provider ever noted any weakness of or difficulty using the left arm (Tr. 27). Likewise, while Devlin alleged significant walking limitations, physical examinations showed him having either a slight limp or a wholly normal gait, with no walking difficulties, and Dr. Smiltneek did not offer any justification or supporting evidence for issuing Devlin a

14

handicap parking sticker. (Tr. 27.) The ALJ further indicated that Devlin's bright affect during his consultative psychological exam was inconsistent with his alleged severe pain. Also, the ALJ considered the lack of medical records following Devlin's visit with Dr. Smiltneek in May 2016. (Tr. 27.)

Devlin argues that the ALJ erred in evaluating his subjective allegations. He maintains that the ALJ did not sufficiently consider his limited daily activities. (ECF No. 15 at 4.) He further maintains that the ALJ improperly criticized him for not seeking medical care throughout 2016 and into 2017. (*Id.*) According to Devlin, he had a high-deductible insurance plan at the time, meaning he was paying out of pocket for all medications and medical bills, which depleted all his savings. Devlin also claims to have sought free medical services through the state during that time.

The ALJ's evaluation of the intensity, persistence, and limiting effects of Devlin's alleged symptoms is not "patently wrong"—that is, it does not lack explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). The ALJ did not cite Devlin's reported activities as a basis for discounting his alleged symptoms. Rather, the ALJ noted Devlin's reported limitations and fashioned the RFC assessment accordingly. Moreover, to the extent the ALJ erred in considering Devlin's lack of recent treatment, this error was harmless, as the ALJ provided several other reasons for not fully crediting Devlin's alleged symptoms. That is, the alleged symptoms were inconsistent with the objective medical evidence. *See*

20 C.F.R. § 404.1529(c). Substantial evidence supports that determination. (*See* Tr. 25-27, 310, 387, 390, 399-401, 448, 475, 479, 483, 488.)

IV. **Worsening symptoms**

Devlin argues that "his anxiety and depression have been worse lately" and that he has several new medical conditions, including "chronic cervical spondylosis, chronic cervical radiculopathy, tendonitis of the biceps, and . . . a schwannoma of the cranial nerve." (ECF No. 26 at 8.) The court's analysis, however, is limited to Devlin's conditions as of the date of the ALJ's decision. If Devlin's conditions have indeed worsened since then, he must file a new application for benefits.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **affirmed**, and this action is dismissed. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 30th day of January, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge